**UNITED STATES of America, Plaintiff,**

v.

**LOCAL 1804–1, INTERNATIONAL LONGSHOREMEN'S ASSOCI-ATION, et al., Defendant.**

**Donald CARSON and Peggy Carson, Plaintiffs,**

v.

**LOCAL 1588, INTERNATIONAL LONG-SHOREMEN'S ASSOCIATION, its Officers, Executive Board, and Trustees, et al., Defendants.**

Nos. 90 Civ. 0963 (LBS), 90 Civ. 5618 (LBS).

United States District Court, S.D. New York.

Aug. 19, 1993.

Mary Jo White, U.S. Atty. for the S.D. of New York, New York City, for U.S.; Claude M. Millman, Aimee B. Wolfson, Asst. U.S. Attys., of counsel.

Fredric J. Gross Law Firm, Mount Ephraim, NJ, for Donald Carson; Fredric J. Gross, of counsel.

Anthony Gallagher, defendant pro se.

Freeman, Nooter & Ginsberg, New York City, for George Lachnicht; Lou Freeman, of counsel.

Goldman & Hafetz, New York City, for Venero Mangano; Frederick P. Hafetz, Susan R. Necheles, of counsel.

Donna Newman, Jersey City, NJ, for ILA Locals 1588.

SAND, District Judge.

In an Opinion issued on January 14, 1993, this Court found that the four remaining

defendants in this case—Donald Carson, Anthony Gallagher, George Lachnicht, and Venero Mangano—were liable for violating the civil RICO statute, 18 U.S.C. § 1962(c). *See United States v. Local 1804–1, Int'l Longshoremen's Assoc.*, 812 F.Supp. 1303 (S.D.N.Y.1993) (the "Liability Opinion"). Three of these defendants—Carson, Gallagher, and Mangano—have moved, pursuant to Fed.R.Civ.P. 52(b), to amend several of this Court's findings of facts and conclusions of law as set forth in the Liability Opinion. The government opposes the motions.

For the reasons that follow, the defendants' motions are granted in part, and denied in part. Familiarity with this Court's Liability Opinion is assumed.

## DISCUSSION

■ Fed.R.Civ.P. 52(b) provides in pertinent part:

Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly.... When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court an objection to such findings or has made a motion to amend them or a motion for judgment.

The purpose of post-judgment motions under Rule 52(b) is to give the district court an opportunity to correct manifest errors of law or fact at trial, or in some limited situations, to present newly discovered evidence.[1] "This is not to say, however, that a motion to amend should be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir.1986). Similarly, a party who realizes, with the acuity of hindsight, that he failed to present his strongest case at trial, is not entitled to a second opportunity by moving to amend a

finding of fact or a conclusion of law. *Id.* at 1220; *see also* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2582 (1971). To entertain Rule 52(b) motions in such a fashion would defeat the compelling interest in the finality of litigation.

Thus, to succeed under Rule 52(b), the defendants must show that the Court's findings of fact or conclusions of law are not supported by the evidence in the record.

### 1. *The Gallagher Confession*

Of all the arguments advanced by the parties in these motions—and there are many—the most important concerns the admissibility of defendant Gallagher's criminal trial testimony which this Court has referred to as the "Gallagher confession." *See* Liability Opinion, 812 F.Supp. at 1323–24. One page from the transcript of Gallagher's criminal trial testimony was admitted in this civil case as GX 5592A. In that testimony, Gallagher was cross-examined by the prosecutor about a conversation Gallagher had had with John Barbato which the government intercepted during undercover electronic surveillance. There can be no doubt that the cross-examination of Gallagher was based on a transcript of the intercepted conversation between Gallagher and Barbato. A transcript of the recording of the conversation between Gallagher and Barbato was also admitted in this civil case as GX 109AA DIG. The relevant text of the Gallagher's criminal trial testimony is as follows:

Q. The top of the page, eight lines from the top, you said:

"So Benny made a division. $10 to Newark. $5 to Mike Losito. $5 to him and Macey and I should give $5 to Donald Carson, and tell Donald don't give anything to Macey. I'll take care of him."

The Benny that you talked about there was Benny Mangano. Isn't that true Mr. Gallagher.

A. Yes, sir.

Q. And the $5 to him and Macey, Macey is Mr. John DiGilio?

A. That's correct.

---

1. In this case the defendants proffer no newly discovered evidence.

Q. And the Donald Carson that you were talking about is the defendant in this case; isn't that true?

A. That's correct. That's correct.

Q. And the division that you were talking about was $25 a container; isn't that true, Mr. Gallagher?

Q. Yeah. Whatever the numbers show.

GX 5592A at 9772.

In this Court's Liability Opinion, the Gallagher confession was credited as evidence that Mangano and Carson knowingly received kickbacks from Gallagher in exchange for their participation in the MOTBY scheme. *See* Liability Opinion, 812 F.Supp. at 1323 (Mangano); *id.* at 1324 (Carson). That finding formed the basis of the conclusion reached by the Court that Carson committed multiple violations of the Taft–Hartley Act and that Mangano and Gallagher aided and abetted those violations.

To understand the basis of Carson and Mangano's objection to the Gallagher confession, we must begin with a brief chronology of the government's attempts to admit Gallagher's criminal trial testimony into evidence. The government advised the parties of its intention to offer Gallagher's trial testimony on December 3, 1991. No party responded to the government's notice. On December 30, 1991, the government informed the Court, Mangano, and Carson that it would request a ruling from the Court on the admissibility of Gallagher's criminal trial testimony. Again, neither Mangano nor Carson raised an objection. Finally, on January 2, 1992, the Court received the transcript in evidence.

On July 9, 1992, the Third Circuit issued its opinion in *United States v. Carson*, 969 F.2d 1480 (3d Cir.1992), reversing Gallagher and Carson's criminal convictions, and holding that 108 of the government's electronic surveillance tapes must be suppressed for failure to seal them in a timely manner in accordance with the federal wiretapping statute. Seven of those transcripts had been admitted without objection in this civil case, including GX 109AA DIG—the tape containing the Gallagher–Barbato conversation. On July 29, 1992, the government voluntarily withdrew the seven transcripts affected by

the ruling from the record. *See* Liability Opinion, 812 F.Supp. at 1318–19 (discussion of suppressed surveillance tapes).

After the Third Circuit's *Carson* opinion was issued, this Court instructed all parties remaining in the case to file post-trial memoranda containing proposed findings of fact and conclusions of law. The parties were specifically instructed to brief the question of the effect of the Third Circuit's *Carson* opinion on this civil case. In response, the government submitted proposed findings of fact and conclusions of law which omitted any reference to the suppressed surveillance tapes. In addition, the government informed the Court that it would rely on Gallagher's confession as *direct* proof of Mangano and Carson's participation in the MOTBY scheme. Specifically, the government wrote:

> Gallagher's criminal trial testimony is already in evidence as direct proof that a $25–a–container payoff was shared with Carson and Mangano and may still be relied on by this Court. Gallagher did not "receive[ ]" his "information" from the wiretap. *See* 18 U.S.C. § 2517(3). He testified from his independent knowledge of the January 3, 1982 conversation. His confession that the conversation took place is indistinguishable from post-arrest confessions that have been held to be cleansed of taint by attenuation. *See Brown v. Illinois*, 422 U.S. 590, 603 [95 S.Ct. 2254, 2261, 45 L.Ed.2d 416] (1975).

*See* Government's Post–Trial Memorandum Concerning the Suppressed Tapes at 21–22. *See also* Government's Memorandum in Opposition to Venero Mangano's Request for Summary Judgment and Reply Concerning the Suppressed Electronic Surveillance Tapes at 12–13 & 13 n. 4 (Gallagher confession provides "uncontroverted *direct evidence of Mangano's state of mind*"). The relevant portion of Gallagher's criminal trial testimony was even attached as Exhibit 3 to the Government's Post–Trial Memorandum Concerning the Suppressed Tapes.

The four individual defendants remaining in this case also filed post-trial briefs. However, only Mangano objected to the admissibility of the Gallagher testimony, claiming that the testimony constituted inadmissible

hearsay against him. The Court rejected that objection as untimely. Liability Opinion, 812 F.Supp. at 1323.

In their Rule 52(b) motions, Mangano and Carson argue that the Court should strike the Gallagher criminal trial testimony from the record for two independent reasons. First, Mangano renews his argument that the testimony is hearsay against him and should have been excluded on that basis. Second, Mangano and Carson argue for the first time in their Rule 52(b) motions that the Gallagher confession is "derived from" a suppressed electronic surveillance tape within the meaning of 18 U.S.C. § 2517 and therefore must be suppressed.[2] The government counters that the defendants waived any objection they may have had to the admission of the Gallagher testimony by failing to make a timely objection when the testimony was offered into evidence in January of 1992.

■ Turning first to Mangano's hearsay objection, Mangano claims that he failed to raise the hearsay objection when the transcript of Gallagher's criminal testimony was offered into evidence because he did not want to "waste his or the Court's time by making what would have been a trivial objection, legally correct but lacking in any substantive import." Mangano's Memorandum in Support of His Motion Pursuant to Rule 52(b) ("Mangano's Mem") at 4. Mangano claims that such an objection would have been "lacking in substantive import" because Gallagher's criminal testimony was cumulative of evidence that was already part of the record—specifically the surveillance tape of the conversation between Gallagher and Barbato.

After the surveillance tapes were withdrawn from the record, Mangano contends the record "was qualitatively different." This difference, Mangano concludes, provides a basis for entertaining his objection to Gallagher's criminal trial testimony at this stage in the proceedings. Mangano also suggests that entertaining his objection at this stage would be "fair" because the Court allowed the government to reopen the record to admit additional pages of the Gallagher deposition after the record was closed: what is good for the goose, Mangano reasons, is good for the gander.

■ This Court sees no reason to disturb its prior ruling that Mangano waived his hearsay objection. First, we find it difficult to credit Mangano's unsupported explanation for his failure to object to the Gallagher testimony on hearsay grounds, for, Mangano did not object to *any* evidence during the trial in this action.[3] More importantly, even if we were to accept Mangano's explanation for his failure to object to Gallagher's criminal testimony on hearsay grounds, that failure would have been the result of the trial strategy he pursued. A party will not be allowed to speculate with the court by letting error go unremarked and then seek a reconsideration under Rule 52(b) or a new trial under Rule 59, if the outcome was unfavorable to that party on the basis of that error. *See* 9 Wright & Miller, *supra*, § 2472 at 455. Finally, we disagree that "fairness" requires that the Court strike Gallagher's criminal testimony on the ground that the Court allowed the government to designate additional

---

2. While Carson argued, in his post-trial memorandum, that the government could not rely on evidence derived from the suppressed tapes, Carson did not specifically argue that Gallagher's criminal testimony was derivative of a suppressed tape. *See* Response of Donald Carson to Government's Post–Trial Memorandum Concerning the Belatedly Suppressed Tapes at 12–16.

3. We recognize that Mangano was a defendant in the "Windows" case in the Eastern District of New York, *United States v. Mangano*, 90 Cr. 446 (RJD), during part of the lengthy proceedings in this civil case, and thus was unable to attend the proceedings. However, Mangano also chose not to present a defense in this case through a representative, an option that was always open to him. Although the burden of proof always remained

with the government, Mangano must suffer the foreseeable consequences of his failure to defend the case: waiver of objections to evidence admitted during the civil trial.

In any event, the jury returned a verdict in the "Windows" case against Mangano on October 18, 1991. Gallagher's criminal testimony—and a good portion of the evidence in the Local 1588–phase of the trial—was not received in evidence until January of 1992. Indeed, the Local 1588 defendants were not scheduled to put on a defense until January 2, 1992. Therefore, nothing would have prevented counsel representing Mangano in the criminal proceedings from putting on a defense in this civil case after the jury returned a verdict in the "Windows" case.

pages of the Gallagher deposition after the record was closed. The government's application to designate an additional fifteen pages of the Gallagher deposition was granted because no defendant—including Mangano—objected to the request. *See* Liability Opinion, 812 F.Supp. at 1322 n. 33. The granting of the government's request to designate these additional pages as included in the record does not constitute more favorable treatment.

■ We turn next to Mangano and Carson's assertion that Gallagher's criminal testimony was derived from a suppressed tape and therefore must be stricken. This Court does not believe that Rule 52(b) is the appropriate vehicle for dealing with this issue in the first instance. It was not until after this Court issued its Liability Opinion in January of 1993 that Carson and Mangano objected to the admissibility of the Gallagher confession as derivative of a suppressed surveillance tape. Putting aside the question of whether the defendants should have preserved their objection to the admission of the Gallagher confession when it was offered by the government,[4] we conclude that the defendants should have raised this objection, at the very latest, in their post-trial submissions to the Court. Indeed, the parties were specifically instructed to brief the issue of the effect of the Third Circuit's opinion in *Carson* on the proceedings in this case. Since the Court gave the defendants an opportunity to raise this objection, and since the defendants failed to avail themselves of this opportunity, this Court will not consider their new theory for suppression of the Gallagher confession at this late stage in the proceedings. *Cf.* Fed. R.Evid. 103(a)(1).

■ Mangano argues that this Court should not find that he waived his objection to the admissibility of Gallagher's criminal testimony because the government would suffer no prejudice if Gallagher's testimony were stricken from the record today. Mangano's unique use of the term "prejudice" requires further explanation. Mangano claims that the government would be in no worse a position if the Court granted the motion to strike today, than it would have been if he had raised the objection in a timely fashion in July of 1992 and if the Court had stricken the Gallagher testimony at that time. This is true, Mangano posits, because the record in this case was closed in July of 1992; therefore the government would have been unable to supplement the record with further evidence to fill in any "hole" that would have been the result of the striking of Gallagher's criminal testimony.[5] We reject Mangano's prejudice argument. First, Mangano is wrong that the government would not be prejudiced if we entertained and granted his motion to strike today. The government prevailed in the liability phase of this trial; if we were to entertain and then grant the motion to strike today, the result would likely be a partial reversal of the finding of liability against Mangano and Carson. This certainly constitutes prejudice to the government in the ordinary sense of the word. Moreover, the proper focus of the inquiry at this stage in the proceedings is not whether the government would suffer prejudice; rather it is whether

---

4. The defendants argue that, practically speaking, they did not have an opportunity to object to the admissibility of the Gallagher confession when it became part of the record in January of 1992. In one sense they are right, for the Third Circuit's opinion in *Carson* was not issued until July of that same year; therefore, the specific basis for the objection did not exist at the time the evidence was admitted. We note however that the *Carson* case was argued on July 10, 1991 and was sub judice before the Third Circuit during the Local 1588 portion of the trial in this case. The parties were aware of the issues raised in the *Carson* case and were on notice that the Third Circuit might rule in Carson and Gallagher's favor and suppress the tapes. Nonetheless, no party raised the objection that the Galla-

gher confession was tainted because it was "derived from" a suppressed tape.

This Court assumes, without deciding, that this objection would have been timely if raised during post-trial briefing by the parties of the effect of the Third Circuit's *Carson* opinion on this civil case.

5. Of course, Mangano assumes that the earliest he could have raised this objection was during post-trial briefing, after the record was closed; the government claims the objection should have been made when Gallagher's criminal trial testimony was offered in evidence in January of 1992, when the record was still open. *See* note 4, *supra*.

Mangano and Carson made a timely and specific objection to the admissibility of the Gallagher confession. Having found that they did not, and having determined that there is no good reason for their failure to do so, we must conclude that the defendants waived their objection. Speculation regarding what might have been if the defendants had properly raised this objection in a timely fashion is irrelevant to whether the Court should entertain, much less grant, the defendant's belated motion to strike raised for the first time in a Rule 52(b) motion.

■ Finally, attached as Exhibit "C" to Donald Carson's affidavit in support of his Rule 52(b) motion are several pages of Gallagher's criminal testimony that were not made part of the record during the liability phase of this action. Carson argues that an examination of Gallagher's statements regarding the division of $25 per container, when considered in the context of the entire testimony, indicates that Carson did not agree to participate in the MOTBY scheme and that he did not receive any money from the scheme. Carson also claims that there is some uncertainty over whether Gallagher was referring to Donald Carson or Donald Porter in his trial testimony. Once again the Court is hearing these arguments for the first time in this round of post-trial motions, and that fact alone would provide a basis for rejecting them as untimely. However, even considering the submitted additional portions of the transcript, along with the other evidence in the record, this Court still finds that it is more likely than not that Carson received kickbacks, in the amount of $5 per container, in return for his participation in the MOTBY scheme. We reject the defendants' claim that the Court misinterpreted the content and import of Gallagher's testimony.[6]

The Court does not reach the merits of Mangano and Carson's claim that the Gallagher confession is derivative of a suppressed surveillance tape and therefore must be suppressed.

### 2. Carson's Declaration in Support of his Rule 52(b) Motion

■ Carson has attempted to supplement the record with an affidavit in support of his Rule 52(b) motion. Although Carson invoked the fifth amendment during depositions and declined to testify during his defense case, he asks the Court to rely on his sworn declaration now, more than one year after the record in this case closed, and several months after the Court issued its Liability Opinion. We reject Carson's effort to supplement the record with his declaration for several reasons. First, as this Court has stated several times, the record in this case is closed, and it has been for over one year. Carson has come forward with no compelling reason why the record should be reopened at this late stage. Second, since the information contained in the declaration does not qualify as "newly discovered," this Court sees no reason, under Rule 52(b), to reopen the record. Cf. Fontenot, 791 F.2d at 1219 (except in the case of newly discovered evidence, the court is required only to amend its findings of fact under Rule 52(b) based on evidence contained in the record). Finally, the Government has not been provided with an opportunity to cross-examine Carson concerning the statements contained in the declaration.

For these reasons, this Court rejects Carson's attempt to supplement the record with his declaration in support of his Rule 52(b) motion. Carson must live with the consequences of his decision not to put forward his version of the facts during the trial in this matter.

### 3. Carson's Objection to the "Tony G" List

■ Carson also objects to the Court's finding that the "Tony G" List was a "record of the amounts that Carson received, or ex-

---

**6.** In addition to the Gallagher confession, this Court noted that there was "other circumstantial evidence that permits the reasonable inference, which we draw, that Mangano assisted Gallagher because Mangano expected to be compensated for his participation in the [MOTBY] scheme." Liability Opinion, 812 F.Supp. at 1323. Manga-

no asks the Court to reconsider the inferences it has drawn, and the evidence upon which those inferences are based. After considering Mangano's various arguments, the Court concludes that the inferences drawn by the Court were proper. We see no reason to disturb any of our findings of fact.

pected to receive, for his part in the MOTBY scheme." Liability Opinion, 812 F.Supp. at 1325. Carson argues that the Court should not have relied on the "Tony G" List because he was collaterally estopped, by his criminal conviction, from offering evidence to demonstrate that the List was an innocent partial memorialization of a give back presentation Gallagher made to the union. *See* Tr. at 5678–81. Carson contends that once his conviction was reversed, the collateral estoppel bar fell, and he should have been afforded an opportunity to demonstrate that the "Tony G" List was not what the government contended it was.

Carson raised this objection during the post-trial briefing before this Court. At that time the government took the position that the Court should not reopen the record to allow Carson to adduce evidence regarding the "Tony G" List because the evidence that Carson sought to admit was already part of the record; specifically the government withdrew its objection to Exhibit NOP–2, Carson and Gallagher's motion for a new trial in their criminal case, which outlined Carson and Gallagher's theory of the origin of the "Tony G" List and which contained certain deposition and affidavit testimony supporting this new theory.

Upon reconsideration, this Court concludes that it did not give due weight to Carson's objection to the "Tony G" List in this Court's Liability Opinion. There is no doubt that Carson was precluded from contesting the government's interpretation of the "Tony G" List during the trial in this civil case. We believe that the List should have been stricken from the record on that basis after the res judicata bar fell, given the government's opposition to the defendants' motion to reopen the record in the case. We disagree with the government that the admission of Exhibit NOP–2 will alleviate all prejudice to Carson.

For, at trial, Carson was precluded from offering evidence which he proffered in addition to Exhibit NOP–2; specifically, he was precluded from calling Gallagher, who was incarcerated at the time, as a witness. Carson also suggests that he might have called eight other witnesses to bolster his explanation of the origin of the List had there been no res judicata bar. *See* Carson's Mem. at 8. For these reasons, this Court believes that it the "Tony G" List should be stricken from the record.[7]

However, we note that this Court did *not* rely on the "Tony G" List to support its finding that Carson received $5 per container in return for the role he played in the MOTBY operation; Gallagher's criminal testimony was credited as direct evidence that Carson received a share of the MOTBY kickbacks. *See* Liability Opinion, 812 F.Supp. at 1324 ("admission of the 'Tony G' List is largely gilding the lily"). Therefore, the striking from the record of the "Tony G" List does not affect this Court's conclusion regarding Carson's liability for multiple Taft–Hartley violations.

4. *Carson's Embezzlement of Salary & Expenses*

Carson argues that the evidence does not support the Court's finding that Carson embezzled a full-time salary from Local 1588 from 1982 to 1988. After reviewing Carson's objections, we adhere to the findings of fact and conclusions of law set forth in our Liability Opinion with regard to Carson's embezzlement of a full-time salary. Liability Opinion, 812 F.Supp. at 1330–31.

■ Carson also contends that the Court erred in finding that Carson embezzled his "expenses" from the union. In the Liability Opinion, we noted that the ILA International's constitution provides that "[a]ll payments

---

**7.** We recognize that had Gallagher been called as a witness to testify about the origin of the "Tony G" List he would have been subject to cross examination with several inconsistent statements he made during the criminal trial regarding the origin of the "Tony G" List. As Judge Debevoise noted, Carson's new theory regarding the "Tony G" List is inconsistent with (1) Gallagher and Carson's grand jury testimony and affidavits and (2) Gallagher's criminal trial testimony regarding the "Tony G" List. *See* Government's Memorandum in Opposition to Vencro Mangano's Request for Summary Judgment at 20–23. However, given the posture of this case, we believe it would be too speculative, and therefore improper, to keep the "Tony G" List in the record on the basis of what might have happened had Gallagher offered inconsistent testimony on the witness stand.

and expenditures of each Local Union shall be made by check upon authorization by resolution of the Local Executive Board." We found that Carson had received over $75,000 as "reimbursed expenses" from the Local's treasury which were not authorized by the Local Executive Board. We also found that Carson had the intent to embezzle these expense reimbursements. Applying Second Circuit law, *see United States v. Butler*, 954 F.2d 114, 118 (2d Cir.1992), we concluded that Carson had embezzled these expense reimbursements in violation of 29 U.S.C. § 501(c). *See* Liability Opinion, 812 F.Supp. at 1330–31.

As we noted in our Liability Opinion, the Second Circuit has held that "authorization from and benefit to the union are the controlling lodestars to determine whether a defendant acted with the fraudulent intent to deprive the union of money." *Butler*, 954 F.2d at 118. Of course, the government bears the burden of demonstrating fraudulent intent with regard to each individual alleged embezzlement. While we adhere to our finding of fact that the Local's Executive Board did not authorize the reimbursement of Carson's expenses, upon reconsideration, we withdraw our finding that the evidence in the record supports the inference that Carson had the intent to embezzle each individual expense reimbursement.[8]

However, the withdrawal by this Court of this finding does not effect our ultimate conclusion that Carson violated the civil RICO statute by the commission of two predicate acts.

### 5. The Forfeiture of Carson's Pension Benefit

Carson also objects to the Court's finding that he injured Local 1588's pension fund and therefore is estopped from claiming benefits from the union's "Top–Hat" pension plan.[9] *See* Liability Opinion, 812 F.Supp. at 1333–34. Carson has renewed his argument that the use of a mixed-labor force at MOTBY was "open and notorious," and that it did not harm the treasury of Local 1588, but instead actually benefited the union's treasury. He also renews his argument that Judge Stern's injunction required that a mixed-labor force be used at MOTBY. These familiar arguments did not prevail during post-trial briefings. Nothing in Carson's brief convinces the Court that it would be appropriate under Rule 52(b) to reverse any of the Court's findings. Accordingly, Carson's motion to amend the Court's findings of fact and conclusions of law with respect to the forfeiture of his pension is denied.

### 6. Gallagher's Objections

Defendant Gallagher's Rule 52(b) motion contains several objections to the Court's Liability Opinion. We will consider each in turn.[10]

First, Gallagher objects to the Court's finding that Gallagher's Company, B & A Reefer, performed no work for United Terminals, Inc. ("UTI") and submitted bills to UTI for fictitious services. *See* Liability Opinion, 812 F.Supp. at 1321. Specifically, Gallagher challenges the Court's finding that it was "highly suspect" that UTI's normal 30– to 60–day billing cycle was ignored for bills from B & A Reefer. *Id.* Gallagher contends that it was common practice for B & A Reefer customers to pay his bills immediately. Even accepting Gallagher's belated assertion as true, Gallagher ignores the fact that the other four independent evidentiary bases cited by the Court, *see id.*, provide

---

8. By contrast, the evidence in the record supports the inference that Carson embezzled his full-time salary from Local 1588. *See* Liability Opinion, 812 F.Supp. at 1330–31.

9. By letter to the Court dated February 25, 1993, counsel for ILA Local 1588 notified the Court that the union local wished to join the government in opposition to Carson's motion to amend the Court's Liability Opinion.

10. Gallagher's Rule 52(b) motion contains a long preamble in which Gallagher accuses the Court

of bias, the Southern District *pro se* office of ineffectiveness, the Bureau of Prison of confiscating his copy of the complaint in this action, and the United States Attorney's Office of failing to cooperate with his requests for documents. Treating Gallagher's accusation of bias on the part of the Court as a motion for the Court to recuse itself, said motion is denied. We find Gallagher's other complaints to be either without merit or irrelevant.

ample support for the finding that Gallagher used UTI to siphon off a portion of the MOTBY profits. Accordingly, we reject Gallagher's claim that the record does not support this finding. To the extent that Gallagher requests that the Court add a finding of fact that all of the companies owned by Gallagher were paid immediately by their various customers, that request is denied.

Second, Gallagher objects to the fourth piece of evidence cited by the Court to support its finding that Gallagher used B & A Reefer to siphon off a portion of the MOTBY profits. The Court noted in its liability Opinion:

> Finally, and perhaps most damning, the false invoices submitted to UTI by B & A Reefer were accounted for on UTI's profit and loss statement for MOTBY as "extra equipment" or "rent" and not as container moves. Tr. 3792–96 (Blickstein). This was so even though no "extra equipment" was ever provided to UTI by B & A reefer or by Gallagher. Indeed, Joseph Mickey testified that Gallagher provided UTI with the figures to include as "extra equipment" in its profit and loss statement on a weekly basis. Tr. 3949–53 (Mickey).

Liability Opinion, 812 F.Supp. at 1321.

Specifically, Gallagher objects to inclusion of the word "or rent" in this finding of fact on the ground that these words do not "exist in any testimony." Gallagher's Brief in Support of Rule 52(b) Motion. The government does not oppose Gallagher's application that these words should be deleted. Govt.'s Mem. at 5–6. After reviewing the relevant testimony, this Court agrees, and hereby orders that the words "and rent" be stricken from the Opinion. However, the striking of these words from the finding does not cast doubt on the Court's finding that the false invoices submitted to UTI by B & A Reefer were accounted for on UTI's profit and loss statement as "extra equipment" rather than as container moves. Nor does the striking of these words cast any doubt on Court's conclusion that Gallagher's Company, B & A Reefer, performed no work for UTI and submitted bills to UTI for fictitious services.

While conceding that "and rent" should be stricken from the above cited passage, the government also contends that the evidence in the record shows that Gallagher siphoned off the profits that UTI made through the MOTBY scheme in two ways. First, as noted in the Liability Opinion, Gallagher's company B & A Reefer submitted phony invoices to UTI. Second, the government claims, Gallagher's other company Consolidated Pier Deliveries ("CPD") obtained inflated "rent" payments from UTI. The government asks the Court to "expressly note that Gallagher manipulated the 'rent' that UTI paid to CPD to siphon off *additional* profits from UTI." Govt.'s Mem. at 6. We note that the Government did not propose these specific findings of fact in their Proposed Findings of Fact and Conclusions of Law. Just as we have refused to allow the defendants to present new theories of their case at this late stage via a Rule 52(b) motion, so shall we refuse to let the government advance new theories of Gallagher's alleged wrongdoing at MOTBY. Accordingly, we decline to make further findings of fact with regard to Gallagher's alleged manipulations of "rent" to siphon off additional MOTBY profits. We do this in full recognition of the fact that the evidence upon which the government relies to support these proposed conclusions is already part of the record before this Court.

Of course, striking the reference in the Liability Opinon to "rent" does not affect the Court's conclusion that Gallagher aided and abetted multiple violations of the Taft–Hartley Act.

Third, Gallagher proposes that footnote 31 of the Liability Opinion be amended to note that the check cashing companies used by B & A Reefer to cash the checks received from UTI were owned by Gallagher. The Court is hard pressed to understand why Gallagher would want the Court to amend the Liability Opinion in a fashion that would tend to incriminate him further in the MOTBY scheme. In any event, Gallagher's proposal is denied, for Gallagher's assertion is not supported by any evidence in the record. Moreover, a Rule 52(b) motion should not be granted where the proposed additional findings of fact are not material to the district court's conclusions. *Lyons v. Jefferson Bank and Trust,* 793 F.Supp. 989 at 991 (D.Colo.

1992). Gallagher's proposed finding falls into this category, and should be denied on that basis.

Fourth, Gallagher alleges that the Court ignored Gallagher Exhibits NOP–2, Carson and Gallagher's motion for a new trial in their New Jersey criminal case. Gallagher continues to contend that this exhibit supports his theory that the "Tony G" list was not a record of $5 per container payoffs to Donald Carson, but rather was a note concerning a proposal made by Gallagher for union give backs. As noted above, the "Tony G" List has been stricken from the record; accordingly, Gallagher's objection is moot.

Fifth, Gallagher contends that a portion of footnote 32, in which the Court found that Gallagher borrowed money from Irving Held, should be amended to read that Gallagher borrowed money from *Milton* Held, Irving Held's brother. *See* Liability Opinion, 812 F.Supp. at 1322 n. 32. At his deposition, Gallagher testified that he had borrowed money from Irving Held, Gallagher Dep. at 30, *and* from Milton Held. *Id.* at 134–35. Since Gallagher's own testimony supports this Court's finding that Gallagher borrowed money from Irving Held, we reject his objection. Indeed, if any amendment of footnote 32 were required, it would be to indicate that Gallagher borrowed money from *both* Irving and Milton Held.

Gallagher's other objections to the Liability Opinion have been reviewed by the Court and are rejected as being without merit.

## CONCLUSION

For the reasons set forth above, this Court's January 14, 1993 Opinion is modified in the following respects:

(1) The "Tony G" List is stricken from the record. The Court's discussion of the admissibility of the "Tony G" List is withdrawn. *See* Liability Opinion, 812 F.Supp. at 1324–25. In addition, the Court's crediting the "Tony G" List as further evidence that Carson received $5 per container move as his share of the MOTBY kickbacks is withdrawn. The Court's conclusion that Carson received $5 per container move is *not* affected by this holding.

(2) The Court's finding that Carson embezzled his expenses from Local 1588 is withdrawn. *See id.* at 1329–31.

(3) The Court's finding that the false invoices submitted to UTI by B & A Reefer were accounted for on UTI's profit and loss statement for MOTBY as "extra equipment" or "rent" is hereby amended to delete any reference to "rent." *See id.* at 1321.

The Court has considered the defendants' other objections and finds them to be without merit.

Nothing in the Opinion issued by the Court today undermines the ultimate conclusion reached by the Court in the Liability Opinion that defendants Carson, Gallagher, Lachnicht, and Mangano violated the civil RICO statute by the commission of two predicate acts.

SO ORDERED.