**UNITED STATES of America,**

v.

**Kathryn AMIEL, Joanne Amiel, and Sarina Amiel, Defendants.**

**No. 92–CR–238 (TCP).**

United States District Court, E.D. New York.

June 15, 1995.

Adrian L. DiLuzio, Woodmere, NY, for Kathryn Amiel.

Daniel Nobel, New York City, Stanley R. Kopilow, Garden City, NY, for Joanne Amiel.

Peter Kirchheimer, Legal Aid Society, Fed. Def. Serv. Unit, Brooklyn, NY, Melvyn Roth, Garden City, NY, Bennett M. Epstein, New York City, for Sarina Amiel.

Dave S. Hattem, Brooklyn, NY, for U.S.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants Kathryn Amiel, Joanne Amiel and Sarina Amiel move this Court for an Order dismissing the Superseding Indictment against them on the ground that their convictions thereunder constitute a second criminal punishment in violation of the Double Jeopardy Clause of the Fifth Amendment. For the reasons set forth below, the Court hereby denies the defendants' motion.

### BACKGROUND

In a Superseding Indictment, dated March 2, 1992, the Government charged Kathryn, Joanne and Sarina Amiel[1] with thirty (30) Counts of Postal and Interstate Wire Fraud, as well as Conspiracy to Defraud, arising out of their operation of a fine arts business.[2] Specifically, the Government charged them with violating 18 U.S.C. §§ 1341, 1342, 3551, and 371 et seq. by engaging in a scheme to defraud, between 1988 and 1991, by selling

---

1. Defendant Hilda Amiel, whom the Government also charged therein, is now deceased.

2. Defendants were originally indicted on January 30, 1992 under District Court Docket No. 92–CR–181. That case was later merged with this case, Docket No. 92–CR–238.

what appeared to be limited-edition, signed prints by well-known contemporary artists. However, the prints were actually counterfeit copies. The contemporary artists whose work the defendants were charged with counterfeiting included Pablo Picasso, Joan Miro, Marc Chagall and Salvador Dali.[3]

Prior to the criminal proceedings, the Government brought a civil forfeiture action against the Amiels under Federal Docket No. 91–CV–2467. In that case, the Government charged the Amiels with violating 28 U.S.C. §§ 1345, 1355 and 18 U.S.C. § 981, as well as using the proceeds therefrom in violation of 18 U.S.C. §§ 1341, 1343, 1956, 1957, 1961 and 2314. *See* First Amended Verified Complaint *In Rem* (July 23, 1991). On July 8, 1991, this Court issued a warrant for the arrest and seizure of the defendants' property *in rem*. Pursuant to this Order, the Government seized certain monies, art, motor vehicles and real property from the Amiels, which the defendants contend have a value of more than four million dollars ($4,000,000).

On or about July 18, 1991, the defendants filed unverified claims on behalf of themselves and several entities against the forfeited properties. Yet they subsequently failed to serve any responsive pleadings to the Verified Complaint or any responses to the First Set of Interrogatories.

On September 10, 1991, the Government filed a motion to dismiss the defendants' claims against the forfeited assets based upon their defaults in the forfeiture proceedings. The defendants failed to file any declarations, affidavits, memoranda of law or other written responses to the Government's motion. Accordingly, after oral argument on October 30, 1991, this Court granted the Government's motion to dismiss on the grounds that the defendants waived their rights to the forfeited property by way of their default.[4]

On or about November 15, 1991, the defendants moved for an Order vacating the partial decree of forfeiture or, in the alternative, to stay enforcement of the decree pending appellate review. This Court gave the defendants an opportunity to establish excusable neglect for their default and demonstrate a meritorious defense. After oral argument on these issues, on January 17, 1992, the Court determined that the Amiels' default was attributable to errors of their own counsel and that they failed to establish excusable neglect.

On October 29, 1992, the defendants appealed this Court's decision to the Second Circuit (Court of Appeals Docket No. 92–6282). Due to the pending criminal proceedings, however, the Government entered into a stipulation with the defendants whereby the latter agreed to withdraw their appeal without prejudice to reinstate it within thirty (30) days of a jury verdict.[5] A jury convicted the defendants in this Court on December 1, 1993. The defendants failed to reinstate their appeal within the thirty (30) days provided in their stipulation. As a result of this second default, their appeal has been deemed withdrawn with prejudice.

Prior to trial on the criminal charges, the Amiels moved to dismiss the Superseding Indictment in case number 92–CR–238 on the ground that the criminal action constituted a prohibited second prosecution in violation of double jeopardy because the Court had already entered a Judgment of Forfeiture against them. In *U.S. v. Amiel*, 813

---

3. For instance, the Government seized 15 fraudulent prints of Picasso's "Dove" (dated 1961), 135 prints of Picasso's "Main Aux Fleurs" (date unknown), and 3 prints of Chagall's "Le Joueur De Flute" (dated 1957), from the defendants.

4. On the same day that the United States Attorney's Office brought the civil forfeiture action against the Amiels, the Federal Trade Commission also brought an action against them seeking injunctive relief, disgorgement and restitution. That case is *Federal Trade Commission v. Leon Amiel Publishers Inc., et al.*, Docket No. 91–CV–2459 (E.D.N.Y., J. Platt) (hereinafter the "FTC"

case). By Order dated August 16, 1994, Joanne and Kathryn Amiel were substituted as defendants therein for their Mother, Hilda Amiel, and Father, Leon Amiel, both of whom are now deceased. On March 23, 1992, this Court stayed the proceedings in the FTC case until the termination of the criminal proceedings against the Amiels.

5. On July 18, 1992, the Second Circuit issued a Mandate indicating that the appeal was withdrawn without prejudice pursuant to this stipulation.

F.Supp. 958 (E.D.N.Y.1993), *aff'd,* 995 F.2d 367 (2d Cir.1993), this Court deemed the defendants' motion premature and, consequently, denied it without prejudice to renew at the conclusion of either the Government's case or the trial. The Court based its decision therein upon the fact that, in the relevant case law, the courts did not address the double jeopardy issue until after the defendants were convicted because it was not clear until then that the defendants had been punished at all. *Amiel,* 813 F.Supp. at 961. Thus, this Court held that double jeopardy simply did not attach under such circumstances. *Id.; cf. U.S. v. Halper,* 490 U.S. 435, 450, 109 S.Ct. 1892, 1902–03, 104 L.Ed.2d 487 (1989).

The Amiels took an interlocutory appeal from this Court's ruling, and the Second Circuit affirmed the decision in *U.S. v. Amiel,* 995 F.2d 367 (2d Cir.1993).[6] Accordingly, the criminal case against the Amiels proceeded to trial in this Court on November 8, 1993. The Government's proof at trial consisted of the following: (1) tens of thousands of fraudulent prints seized from the defendants' homes and business; (2) expert testimony establishing that the seized prints were fraudulent and contained forged pencil signatures of the true artists; (3) extensive documentary evidence establishing that the defendants sold millions of dollars worth of fraudulent prints to their distributors; (4) the testimony of Marc Kniebihler (the chromist who worked for the Amiels for five years creating the fake art), implicating the defendants and testifying about explicit conversations he had with Kathryn Amiel regarding the fraudulent nature of the art; (5) the testimony of three cooperating witnesses, two of whom distributed the fraudulent works for the defendants; (6) evidence that the defendants knew that several of their

distributors were arrested for selling the defendants' fraudulent art and that the defendants continued to sell the art even then; (7) the testimony of the defendants' employees; and (8) recorded conversations taken during an undercover investigation of the Amiels.

After a three-week trial, the jury found: Kathryn Amiel guilty on Counts 1–5, 8–9, 14–29, and 30; Joanne Amiel guilty on Counts 4–5, 8–9, 14, 20–29, and 30; and Sarina Amiel guilty on Counts 1–3, 15–29, and 30. Pending sentence, the three defendants asked this Court to reconsider their earlier double jeopardy motion. The Court agreed to do so, but asked for renewed submissions on the issue. On May 5, 1995, prior to sentencing the Amiels, the Court denied their renewed motion to dismiss from the Bench and indicated that this Memorandum and Order would follow.

The Court then imposed the following sentences: seventy-eight (78) months incarceration, three (3) years supervised release, and a $1,200.00 special assessment on Kathryn Amiel; forty-six (46) months imprisonment, three (3) years supervised release, and an $800.00 special assessment on Joanne Amiel; and thirty-three (33) months incarceration, three (3) years supervised release and a $950.00 special assessment on Sarina Amiel. The Court denied the defendants' motions for downward departures. Yet the Court imposed no fine or restitution upon any of the defendants, as it might have done pursuant to U.S.S.G. § 5E1.2 and § 5E1.1, respectively.[7] The Court made it clear on the record that it was avoiding any inference or claim of monetary double jeopardy by its decision to omit fines and restitution from the Amiels' sentences. *See* Transcript of Sentence of Sarina Amiel (May 12, 1995) at 13.[8] The

---

**6.** In so doing, the Second Circuit wrote that it would be premature to decide the double jeopardy issue at that juncture because both proceedings appeared to be incomplete and, as such, it was not clear that the defendants had been punished at all. *Id.* at 370.

**7.** Under U.S.S.G. § 5E1.1 and 18 U.S.C. § 3553(a)(7), this Court could have ordered restitution in substantial sums in accordance with 18 U.S.C. §§ 3663 and 3664. Similarly, under U.S.S.G. § 5E1.2 and 18 U.S.C. § 3571(e), the

Court could have fined Kathryn Amiel up to $125,000 for her total offense level of 27, Joanne Amiel up to $100,000 for her total offense level of 23, and Sarina Amiel up to $75,000 for her offense level of 21.

**8.** The Court also stated on the record as follows: "I think there was good reason, as I outlined for you, for the Government to proceed with the civil forfeiture. And I think given all the facts ... it was appropriate. And I don't think it would be appropriate for me in this case to impose a fine

Court then stayed execution of the Amiels' sentences pending appeal.

On May 10, 1995, it came to the Court's attention that the Amiels recently filed a malpractice action in New York State Court against the attorneys who represented them in the civil forfeiture proceedings. In that action, the Amiels allege that their attorneys were negligent in defaulting in the civil forfeiture proceedings and seek $16.5 million in compensatory and punitive damages. Letter from Gary Brown, Assistant United States Attorney, to the Court (May 10, 1995). If the defendants are successful in their malpractice suit, they may recover the value of their forfeited property. If this motion were granted, the double jeopardy question at issue here would be eradicated and, indeed, the defendants would have made a mockery of the entire process. This Court must, nevertheless, proceed with its determination of the issue without the benefit of knowing what the outcome of the malpractice action will be.

### DISCUSSION

*THE COURT PROPERLY ENTERTAINED DEFENDANTS' MOTION PRIOR TO IMPOSING SENTENCE UPON THEM*

■ The parties to this case concede that the sequence of procedures is of no great consequence with respect to whether the Court should entertain this motion prior to or after sentencing the Amiels. *See, e.g., U.S. v. Morgan,* 51 F.3d 1105 (2d Cir.1995) (the sequence of procedures is not critical with regard to determining a double jeopardy motion). Indeed, as defense counsel writes, "[t]here currently exists no real debate" in this regard. Defendants' Memorandum In Support of Presentence Double Jeopardy Hearing and Dismissal of Indictment (April 7, 1995) at 6. Thus, the Court properly exercised its discretion in entertaining the Amiels' renewed motion to dismiss prior to

or restitution." Transcript of Motion and Sentence (May 5, 1995) at 38.

9. *Cf. U.S. v. Local 1804-1,* 831 F.Supp. 167 (S.D.N.Y.1993) (prior to commencing the "remedy" or sentencing stage, the Court entertained defendants' double jeopardy motion).

imposing sentence upon them. *See, e.g., U.S. v. Marcus Schloss & Co., Inc.,* 724 F.Supp. 1123 (S.D.N.Y.1989) (Court considered defendant's pretrial and renewed post-conviction double jeopardy motion prior to imposing sentence when the criminal prosecution followed on the heels of the civil judgment).[9]

*THE COURT NEED NOT HOLD A PRESENTENCE HEARING AS TO THE VALUE OF THE FORFEITED ASSETS*

■ The defendants base their double jeopardy motion, in part, upon their contention that the Government's seizure was greatly disproportionate to the loss stemming from their crimes. Therefore, they argue that the seizure was punitive rather than purely compensatory in nature. The defendants rely upon *U.S. v. Halper, supra,* in support of their argument. In *Halper,* the Supreme Court found that a civil penalty assessed under the False Claims Act was so disproportionate to the Government's losses that it created a rebuttable presumption that the penalty was a second punishment in violation of double jeopardy. *Halper,* 490 U.S. at 448-49, 452, 109 S.Ct. at 1901-02, 1903-04.[10] Thus, the Supreme Court held as follows:

[A] defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not be fairly characterized as remedial, but only as a deterrent or retribution.

*Id.* at 448-49, 109 S.Ct. at 1902.

In light of this case law, the Amiels argue that the Government forfeited properties of theirs which allegedly have a value in excess of four million dollars ($4,000,000); yet the monetary loss from their crimes amounted to only two hundred twenty-six thousand dollars ($226,000). *See* Defendants' Memorandum in Support of Presentence Double Jeopardy Hearing and Dismissal of Indictment (April 7, 1995) at 2-3. The Amiels also con-

10. *See also Montana Department of Revenue v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (a financial exaction, such as a tax imposed only on persons arrested for drug offenses, can count as a separate jeopardy).

tend that the Court should not have granted the Judgment of Forfeiture against them without holding an evidentiary hearing to determine whether the seizure was disproportionate to, and/or whether the property was traceable to, their crimes. *Id.* at 3. Thus, the defendants now demand such a hearing.

The Government refutes the defendants' claims by arguing that their crimes amounted to "an actual loss that has been conservatively calculated to be in excess of $29 million." Government's Memorandum of Law in Opposition to Defendants' Renewed Motion (April 28, 1995) at 11. Thus, the Government concludes that the four (4) million dollar seizure was, by no means, disproportionate to the proceeds of defendants' crime and that this Court need not hold a hearing on this issue.

The Probation Department, on the other hand, concluded that it "is impractical to calculate the total actual loss" stemming from the Amiels' fraudulent scheme, but that, "[a]t the very least, it is posited that the defendants profited, over the course of this scheme, in the millions of dollars, while the victim losses are in the tens of millions of dollars." Presentence Report at ¶ 18.

This Court is aware that certain civil sanctions may be so extreme or punitive as to trigger the Fifth Amendment's protection against cumulative punishments, as they did in *U.S. v. Halper, supra.* However, the Court agrees with the Probation Department that the duration of the Amiels' fraudulent scheme, combined with the total number of prints sold and their widespread distribution, make it virtually impossible to calculate the total loss herein.[11] *See* Government's Memorandum of Law in Opposition to Defendants' Renewed Motion at 14.[12] Moreover, the Court did not sentence the defendants on the basis of all 77,000 allegedly fraudulent prints which the Government seized from them.

Rather, the Court only sentenced the defendants on the basis of the 15,000 fraudulent prints that were introduced into evidence at trial. As a result, the Court did not need to consider the question of whether the seizure was "overwhelmingly disproportionate" to the crime before imposing sentence. Moreover, as noted above, this Court could have, but did not, order restitution and/or fines as part of the defendants' sentences. It thereby could have averted any double punishment by simply deducting the value of the property already forfeited from the restitution or fine.

In addition, the Court finds that it need not engage in the *Halper* analysis of whether the forfeiture herein was punitive or purely compensatory because the Amiels defaulted twice in the forfeiture proceedings: once in the District Court and once upon appeal. Consequently, they waived their right to raise the issue of double jeopardy now. *See, e.g., U.S. v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (double jeopardy is a personal constitutional right that can be waived). Similarly, the Court finds that there is no need to hold a double jeopardy presentence hearing on this issue because the Court granted the forfeiture on the basis of the defendants' default in those proceedings. *See, e.g., U.S. v. Millan,* 2 F.3d 17, 19 (2d Cir.1993) (Court held that there was no need to reach the issue of whether the Government seizures were "overwhelmingly disproportionate" to the value of the illegal proceeds because they found that the proscription of double jeopardy did not apply for other reasons).

### DEFENDANTS WAIVED THEIR RIGHT TO RAISE DOUBLE JEOPARDY BY DEFAULTING IN THE FORFEITURE PROCEEDINGS

Several circuit courts have addressed the issue of whether a party who defaults in

---

11. For instance, the Government seized over 77,000 prints from the Defendants' premises and introduced approximately 15,000 of those into evidence at trial. Probation only utilized the wholesale price that the Defendants charged their distributors for prints that were actually sold in order to calculate the loss. *See* Addendum to the Presentence Report. Thus, this calculation does not include the loss sustained by the Estates of Miro, Chagall, Picasso and Dali

through the dilution of their legitimate, limited-edition print markets. *Id.* Moreover, the related FTC investigation into the Amiels' business practices revealed invoices showing that, since their Father's death in 1988, the Amiels have made sales in excess of $5 million wholesale. *Id.* at ¶ 15–16.

12. *See also* Presentence Report at ¶¶ 14, 18.

an administrative forfeiture may subsequently rely on that forfeiture to assert double jeopardy protection. They have held that the party may not do so. In *U.S. v. Torres,* 28 F.3d 1463 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994), for instance, the prosecutor commenced separate criminal and administrative proceedings against the defendant, seeking both imprisonment and a fine in the former and forfeiture in the latter. The Government ultimately forfeited the defendant's drug proceeds prior to prosecuting him criminally for the underlying drug offense. *Id.* at 1464. Yet the Seventh Circuit held that the forfeiture was not former jeopardy which barred a sentence of imprisonment because the defendant defaulted therein. The defendant defaulted because he received notice inviting him to claim against the assets, yet he never did so. As a result, the *Torres* Court found that the defendant did not become a party to the forfeiture and, consequently, double jeopardy did not attach. In reaching this conclusion, the Seventh Circuit wrote as follows:

> This case shows ... that parallel administrative and criminal actions do not necessarily violate the double jeopardy clause. *... As a result [of defendant's default], he did not become a party to the forfeiture. There was no trial; the $60,000 was forfeited without opposition, and jeopardy did not attach. You can't have double jeopardy without a former jeopardy.* [Citation omitted] ... As a non-party, [the defendant] was not at risk in the forfeiture proceeding, and 'without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.' [The defendant] was no more in jeopardy than he would have been in a separate trial of [his codefendant]—a trial in which [the defendant] might have been a witness.... *If Torres lacked an interest in the cash, its forfeiture did not impose any penalty on him,* and again the argument derived from *Kurth Ranch* fails. A non-'penalty' imposed in a civil proceeding does not amount to 'jeopardy of life or limb' within the meaning of the [F]ifth [A]mendment.

*Id.* at 1465 (quoting *Serfass v. U.S.,* 420 U.S. 377, 389, 391–92, 95 S.Ct. 1055, 1063, 1064–65, 43 L.Ed.2d 265 (1975) (emphasis added)).

Similarly, in *U.S. v. Kemmish,* 869 F.Supp. 803, 805 (S.D.Cal.1994), the Court followed the *Torres* decision when it held that a defendant in an administrative forfeiture, who did not claim against the seized assets, was a "nonparty" and, as such, could not raise double jeopardy in the subsequent criminal prosecution because he had waived this claim. Specifically, the Court wrote that "[d]efendant Kemmish could neither be placed in jeopardy nor punished in the constitutional sense unless he ha[d] participated as a party in a proceeding and in a manner aimed at determining, at least in part, his personal culpability." *Id.*[13]

Defendants in civil forfeiture actions can default by failing to file claims against the seized assets, as they did in *Torres, Kemmish,* and *Walsh;* or they can default by filing claims and then failing to pursue those claims, as the Amiels did. For instance, in *U.S. v. Millan, supra,* the defendants-appellants claimed against the seized properties and bank accounts. Yet they then entered into an agreement with the Government whereby each side relinquished its claims to certain of the seized assets. In accordance with this stipulation, the District Court dismissed the *in rem* civil suit. *Millan,* 2 F.3d at 18. The defendants then moved to dismiss the criminal indictment as well, on the grounds that the Government was barred from prosecuting them by double jeopardy because the stipulation acted as a prior punishment for the same crimes. The District Court denied the defendants' motion, finding that the two prosecutions constituted a single prosecution and, therefore, did not implicate the prohibitions of double jeopardy. The District Court based its holding upon the following three factors: (1) the civil and criminal prosecutions constituted a single, coordinated prosecution; (2) the value of the seized property was not "overwhelmingly disproportionate" to the value of the illegal narcotics giving rise to the criminal indictment; and (3) *the defendants were estopped from*

---

**13.** *Accord U.S. v. Walsh,* 873 F.Supp. 334 (D.Ariz.1994) (defendant's failure to file a claim or respond to civil forfeiture proceeding was effective waiver of his double jeopardy challenge).

*making this assertion because they voluntarily stipulated to withdraw their claims against the forfeited assets, thereby waiving their rights to raise the claim of double jeopardy. Millan,* 2 F.3d at 19 (emphasis added).

The Amiels argue that *Millan* "is no longer controlling in the Second Circuit because it is no longer good law" in light of *Kurth Ranch, supra,* n. 9. Letter from Adrian L. DiLuzio, Esq., Defense Counsel, to the Court (May 10, 1995). Defense counsel's assertion, at least insofar as the *Amiel* case is concerned, is incorrect, however. Indeed, in *Torres,* the Seventh Circuit found that *Kurth Ranch* was inapplicable because Torres' failure to make a claim in the forfeiture proceedings meant he did not own or have any interest in the assets. *Torres,* 28 F.3d at 1465; *see also Walsh,* 873 F.Supp. at 336. Similarly, this Court finds that *Kurth Ranch* is inapplicable to the *Amiel* case because the Amiels defaulted in the forfeiture and, thus, have no viable interest in the forfeited properties. *See Amiel,* 995 F.2d at 371–72 (on prior review of the Amiels' double jeopardy motion, the Second Circuit wrote: "If an appeal is now barred or if the default judgment is affirmed on appeal, then it would appear that defendants have no legitimate claim to the seized properties, which would vitiate any claim of 'punishment' based on the civil forfeiture.").

## THE CIVIL AND CRIMINAL PROCEEDINGS WERE PART OF A SINGLE, COORDINATED PROSECUTION

■ This Court also finds that the Government's civil and criminal proceedings against the Amiels, with respect to the fraud charges under 18 U.S.C. § 1341, did not violate double jeopardy in that they were "but different prongs of a single prosecution" under the rationale of *Millan,* 2 F.3d at 20.[14] The Indictment in the criminal action against the Amiels (92–CR–238), and the Complaint in the civil action (91–CV–2467), both charge the Amiels with committing Postal Fraud in violation of 18 U.S.C. § 1341.[15] The Government brought the civil forfeiture action on July 8, 1991, and it brought the criminal action approximately six months later. This Court notes that in *Millan,* the Government filed its civil and criminal cases against the defendant on the same day, and the *Millan* Court took this into consideration in reaching its decision. Yet the Court also notes that a discrepancy of several months in this regard, as occurred in the *Amiel* case, does not prevent a criminal prosecution and civil forfeiture from being deemed a single, coordinated prosecution. In *U.S. v. One Single Family Residence Located at 18755 North Bay Road, Miami,* 13 F.3d 1493, 1494 (11th Cir.1994), for example, the Eleventh Circuit held that the Government conducted a single, coordinated prosecution when it brought an *in rem* civil forfeiture action on October 11, 1990, and then indicted the defendants on March 26, 1991. In so holding, the Circuit wrote as follows:

There is no question that the same conduct supports both [defendant's] criminal conviction and his civil forfeiture.... [T]he Court in *Halper* held that its decision does not 'prevent the Government from seeking

**14.** In *Millan,* the Court held that the civil forfeiture was part of a single, coordinated prosecution of defendants and, thus, settlement of the forfeiture did not bar criminal prosecution for the underlying offense on grounds of double jeopardy. *Id. See also Torres,* 28 F.3d at 1464 (citing *Ohio v. Johnson,* 467 U.S. 493, 500, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984) ("[T]he double jeopardy clause does not bar cumulative punishments imposed in a single proceeding—whether these be the ordinary combination of prison plus a fine, or consecutive terms in prison, *or prison plus a forfeiture.*")).

**15.** Specifically, the former charges that the defendants produced, distributed and sold counterfeit/fake lithographs, aquatints, engravings, etchings, prints and other forms of unauthorized reproductions of limited edition art allegedly created by Picasso, Miro, Chagall, Dali and other artists; whereas the latter charges that the Amiels "have sold and continue to sell photochemical reproductions of various visual artworks by Chagall, Dali, Miro and Picasso, ... to art dealers, wholesalers, distributors and the public ... [with] representations or indicia which suggest that the reproductions were issued as part of a limited edition.... The reproductions sold by the Amiels, in fact, are unauthorized, low quality prints." ¶ 10, 19, and 25. *See* First Amended Verified Complaint *In Rem* in 91–CV–2467 (July 23, 1991) at ¶ 1–3, and Superseding Indictment in 92–CR–238 (February 5, 1992).

and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding.' *Halper*, 490 U.S. at 450, 109 S.Ct. at 1903. [W]e find that the circumstances of the simultaneous pursuit by the government of criminal and civil sanctions against [the defendant] pursuant to 18 U.S.C. § 1955, falls within the contours of a single, coordinated prosecution. *Applying Sections 1955(a) and (d), the statute provides for imposition of both civil and criminal penalties.*

*Id.* (Emphasis added).

Similarly, the Government brought both civil and criminal charges under 18 U.S.C. § 1341 against the Amiels as part of a coordinated effort to put an end to their extensive and prolonged fraudulent scheme. In that respect, the Government was pursuing all civil and criminal remedies available to it by that statute, as well as by 18 U.S.C. §§ 1345 and 981(a)(1)(D)(v). Thus, the two actions do not raise the specter that the Government was acting abusively by seeking a second punishment because it was dissatisfied with the punishment levied in the first action, as was the concern in *Halper*, 490 U.S. at 451 n. 10, 109 S.Ct. at 1903 n. 10. *See also Millan*, 2 F.3d at 21.[16]

### THE STATUTES AT ISSUE ALLOW THE GOVERNMENT TO PURSUE BOTH CRIMINAL AND CIVIL SANCTIONS AGAINST THE DEFENDANTS

Section 1341 of Title 18 of the United States Code, which the Government charges the Amiels with violating in both the criminal Indictment and the civil Complaint, allows courts to fine defendants, incarcerate them for up to five years, *or do both.* 18 U.S.C. §§ 981(a)(1)(C) and (a)(1)(D), in turn, allow

courts to enter judgments of forfeiture against defendants for violations of 18 U.S.C. § 1341 only insofar as such violations "affect . . . a financial institution" or relate to the sale of assets acquired or held by the Resolution Trust Corporation, the Federal Deposit Insurance Corporation, or any other conservator for a financial institution. Thus, the Government could not have properly forfeited the Amiels' properties and then prosecuted them criminally if it had only charged them with violating 18 U.S.C. § 1341.[17]

In the civil case against the Amiels, however, the Government charged them with Money Laundering under 18 U.S.C. §§ 1956 and 1957. Thus, the Government was, indeed, entitled to seize the Amiels' assets pursuant to 18 U.S.C. § 981(a)(1)(A). Moreover, the Government did not indict the Amiels on the Money Laundering or RICO charges, and the Court did not impose criminal sentences with respect to those charges. As a result, even if the Amiels had not defaulted in the forfeiture action, thereby making it arguably penal in nature, they would have been subjected to separate punishments for separate offenses in this respect. This Court, therefore, finds that the civil and criminal actions against the Amiels did not violate the Double Jeopardy Clause of the Fifth Amendment.

### CONCLUSION

For the reasons set forth above-herein, the Court hereby denies the defendants' renewed motion to dismiss the Superseding Indictment against them because it finds that they have not been subjected to double jeopardy.

SO ORDERED.

---

**16.** On January 30, 1992, the Amiels were arrested and arraigned in the criminal case. At that time, the Court had already entered a Judgment of Forfeiture against them, and the decision was on appeal before the Second Circuit. Thus, defense counsel's point that the *Amiel* case is distinguishable from *Millan* because the civil action in the former went to Judgment in the District Court before the criminal action began, is well taken. Letter from Adrian DiLuzio, Defense Counsel, to the Court (May 10, 1995). Yet the Court finds that this is not dispositive in light of

all the other bases for its decision that the Amiels have not been subjected to double jeopardy. Nor does the Court view as dispositive the fact that the Government also charged the Amiels with Money Laundering under 18 U.S.C. §§ 1956 and 1957, and RICO under 18 U.S.C. § 1961—as well as Fraud in violation of 18 U.S.C. § 1341— in the civil Complaint.

**17.** 18 U.S.C. § 371, under which the Defendants were also indicted, is not punishable by civil forfeiture either.